Hickman, J.
The original action was commenced in the court of common pleas of Muskingum county, by the *477 plaintiff, Minerva Conrad, against the defendants, Sarah E. Everich and W. H. Bolin, as sheriff of that county. The object of the suit was, to enjoin the sale under execution of certain lands and tenements in Zanesville, Ohio, described in the plaintiff’s petition, which had been levied upon by the sheriff, to satisfy a claim for alimony in favor of Sarah E. Everich. As disclosed by the record, the undisputed facts that give rise to the only question before us for determination, are as follows:
At the Jannary term, 1889, of the court of common pleas of Muskingum county, Sarah E. Everich obtained a divorce from her husband, James S. Everich, in an action for divorce and alimony, wherein the court, having ordered the delivery to her of certain articles of personal property of which she was the owner, further ordered, adjudged and decreed that James S. Everich pay to her additional alimony in the sum of one thousand dollars, and in default of such payment within five days thereafter, that execution issue therefor ; and further, that he pay the taxed costs of the action, and that execution issue therefor in default of payment. Neither the petition in the action nor the decree for alimony, described, mentioned, or referred to any lands or tenements; and the decree for alimony was simply for the gross sum of one thousand dollars in money, and was not, by its terms, made a charge upon any real estate.
On March 14, 1889, Mrs. Everich caused an execution to be issued against the property of James S. Everich, to satisfy the judgment for alimony and costs, and the same was levied by the defendant, W. H. Bolin, as sheriff, upon certain personal property, but, no levy thereof was made on any lands and tenements, and the same was duly returned into the office of the clerk of the court on May 4, 1889. The personalty levied on was sold for $48.20, for which a credit was given on the execution; and on August 1, 1889, a second execution was issued, and levied on the lands and tenements described in the petition, which the sheriff caused to be appraised and duly advertised and offered for sale.
On the 10th day of July, 1889, the plaintiff, being fully informed of the decree for divorce rendered at the January *478 term, 1889, of the court of common pleas, purchased the lands and tenements so levied on, from James S. Everich, who, on that day, conveyed to her in fee simple the purchased premises.
At the time of the purchase of the property, there was a mortgage thereon which had been executed by James S. Everich and Sarah E. Everich, when husband and wife; and by the terms of the contract of purchase, the plaintiff was to assume the payment of that mortgage as part of the consideration of the conveyance to her. A release of the mortgage was accordingly obtained, by the plaintiff executing with her husband, to the mortgagee, a new mortgage on the property for the amount originally secured.
As prayed for in the plaintiff’s petition, the court of common pleas perpetually enjoined the defendants from selling or offering for sale, by virtue of the judgment for alimony, the lands and tenements levied on, and advertised for sale under execution.
On petition in error by Sarah E. Everich, the circuit court reversed the judgment of the court of common pleas, and remanded the cause for a new trial. By this proceeding in error, the plaintiff, Minerva Conrad, seeks to reverse the judgment of the circuit court.
Upon the facts as thus stated, the question is presented, whether the judgment in favor of Mrs. Everich' for one thousand dollars in gross, as alimony, was, per se, a lien on the lands of James S. Everich in Muskingum countj’. If such lien was thereby created, the claim for alimony must take precedence of any rights under the deed executed to the plaintiff subsequently to the rendition of the judgment.
It is urged in behalf of the plaintiff, that in Olin v. Hungerford et al., 10 Ohio, 268, decided in 1840, it was held that, a decree for alimony, to be paid in installments, does not operate as a lien upon the real estate of the defendant unless made a charge thereon by the decree itself. The decree in question in that case was rendered in 1831, and its effect was determined in accordance with the statute in force at the time of its rendition. By the act then in operation, the court in their discretion might grant alimony, *479 where the evidence justified such decree. 2 Chase’s Stat. 1409. The statute did not make the decree a lien on real estate; nor was the effect of the decree, as to alimony, declared; nor was the mode of enforcing its payment designated. But the power to grant alimony having been conferred, some mode of enforcing its payment incidentally followed. And the court, while adopting the practice of enforcing collection by execution, considered it an exercise of legitimate power to make its decree a charge upon real estate, and such had been its practice in cases where it was deemed proper. It is true that, by section 7 of the act of March 14, 1831, “directing the mode of proceeding in. chancery,” 3 Chase’s Stat. 1692, it was provided that, “ decrees in chancery shall from the time of their being pronounced, have the force, operation and effect, of a judgment at law.” But the court, in the above cited case, did not recognize a sufficient analogy to hold, that a decree in a divorce case, which allows alimony to the wife, and which is a statutory proceeding throughout, is in the nature of a decree in chancery; and was of the opinion, that there could be no more propriety in calling the proceedings in a divorce case proceedings in chancery, than there would be in calling proceedings for the partition of real estate, under the statute regulating 'that subject, proceedings in chancery. By the amendatory act, however, concerning divorce and alimony, passed March 1, 1834(32 Ohio E. 37), it was enacted, “that all proceedings in cases of divorce shall be as in chancery.” But, the court in Olin v. Hungerford et al., supra, did not regard this statute as fixing the force and effect of decrees in cases of divorce, but only as providing the proceedings in order to arrive at such decrees. And hence, in delivering the opinion, the court uses the language: “Even under this statute, should we hold that a decree for a gross sum to be paid the wife would operate as a lien, it does not follow that the same principle would hold where, as in the present case, it was for the payment of specified sums annually during the joint lives of the parties.” It is manifest, therefore, that the court did not pass upon the question now be *480 fore us, whether a decree for alimony payable in gross operates as a lien upon the lands of the husband in the county where it is rendered; but, as involving a difference of principle, the court signified that in respect to being a lien upon real estate, a distinction might be drawn between a decree for alimony payable in gross, and a decree payable in installments.
In Kurtz v. Kurtz, 38 Ark., 119, the court speaks of the embarrassment and inconvenience incurred by making future payments of alimony a lien upon real estate, as too obvious for discussion; but remarks that, “as for all sums ordered to be paid at once, and for which execution may issue, they are already general liens, without being so expressed.” As, in our view, a decree for a gross sum to be paid the wife for alimony would, in itself, operate as a lien, we do not think it necessary to inquire, how far a decree for alimony payable in installments, is thereby obviously distinguishable in regard to its operative effect as a lien upon real estate.
By the adoption of the code of civil procedure, the distinction between actions at law and suits in equity, and the forms of all such actions and suits, theretofore existing, were abolished; and in their place, but one form of action, called a civil action, was instituted. Prior to the adoption of the code, judgments at law and decrees in chancery were made liens by statute on the lands of the debtor in the county. But, the final determination of the rights of the parties in action is now denominated a judgment; and a' lien of judgment attaches to the lands and tenements of the debtor, within the county where the judgment is entered, from the first day of the term at. which judgment is rendered. Revised Statutes, sections 5310, 5375. This definition of a judgment is broad enough to comprise all final judgments and all final decrees. Within the meaning of the statute, a final determination of the rights of the parties in an action for divorce and alimony, in which a sum in gross is ordered to be paid as alimony, is in its nature a judgment; and if so, we discover no good reason why it should not become a lien upon lands as other judgments. In section 5697, of the Revised Statutes; the award *481 of alimony is designated a “judgment.” It is enacted by section 5703, that the court shall, on petition for alimón}', * * * “give judgment in favor of the wife for such alimony out of her husband’s real and personal property as is just and equitable, which may be allowed to her in real or personal property, or both, or in money, payable either in gross or in installments.” The statute thus, to all intents and purposes, authorizes a money judgment as and for alimony, with the same force and effect, in itself, as any ■other judgment for the payment of money.
It is contended in argument that alimony is not a debt, and if not, that it is difficult to see how it is a lien unless expressly made so by the court. But, in Lockwood v. Krum, 34 Ohio St., 1, it is well said by Boynton, J., in delivering the opinion of the court: “The claim for alimony rests on the common law obligation of the husband to support the wife in a manner suitable to his condition and station in life during the existence of the marriage relation. And this obligation is as binding after the commission, by the husband, of a marital offense entitling the wife to a divorce, as before. 'In respect to such obligations she may well be held to be a creditor of the husband.” In Chase v. Chase, 105 Mass., 385, it was held that a judgment for alimony in the case of a divorce a viñado, or from bed and board, creates a debt of record in favor of the wúfe, and that she is entitled, as a creditor, to impeach a conveyance made by him with intent to defraud her. It is said by the Supreme Court of the United States, in Barber v. Barber, 21 How., 582, 595, that when the court having jurisdiction of her suit, allows the wife from her husband’s means, by way of alimony, a suitable maintenance and support, “it becomes a judicial debt of record against the husband; and is as much a debt of record, until the decree has been recalled, as any other judgment for money is.” And if the duty of the husband to provide proper maintenance and support for his wife, before' and after a decree of divorce, is not technically a debt, it is, nevertheless, a paramount obligation springing out of a sacred relation, which, when it has passed into *482 judgment, should, as such, carry with it the well known binding force that attaches to judgments at law.
We have examined the adjudications in the several states to which our attention has been called, and we think that reason and the weight of authority favor the conclusion, that a decree of divorce awarding alimony to the wife in a gross sum, creates a lien on the husband’s real estate.
In the case of Lawton's Petition, 12 R. I., 210, it was held that an allowance of alimony in the sum of one hundred dollars per annum during the wife’s natural life, or until the further order of the court, to be paid semi-annually, did not constitute a lien, payment not having been secured by an express charge on the real estate. But, in that state, judgments are not liens upon real estate except under levy of execution, and decrees for alimony are not an exception unless they become so by being specially charged upon lands.
In Frakes v. Brown, 2 Blackf., 295, the wife obtained a divorce, and a judgment for the sum of five hundred and fifty dollars as alimony. By virtue of a fieri fiadas issued upon this judgment, the land in question was sold, and Brown, the complainant, was the purchaser. In a bill in chancery, the complainant prayed that a conveyance of the land made by the husband to the defendant, Frakes, might be set aside as fraudulent and void. In the opinion Brackford, J., says: “It is said, that real estate is not liable on a decree for a divorce and alimony. The answer to this is, that here is a judgment against the husband for a certain sum of money, rendered by a court having jurisdiction of the cause; and that every judgment of this kind is, by statute, a lien on real estate. It is not for this court to look beyond the judgment in the case before us. It must be considered as having the same effect as all other judgments for the payment of money, whilst it stands unreversed and remains unsatisfied.” The statute by which judgments became a lien on real estate, was the general enactment: “Judgments in the circuit courts, are hereby made liens on the real estate of the defendant or defendants, from the day of the rendition thereof, in the county where such judg *483 ment may be rendered.” Rev. Raws of Ind. (1824), 192.
In Keyes v. Scanlan, 63 Wis., 345, the complaint set out, that the plaintiff recovered a judgment for divorce against her husband, and that the sum of three hundred dollars alimony, and costs of suit, were adjudged in her favor. Section-'2367 of the Annotated Statutes of Wisconsin, provides, that upon the failure to pay the alimony adjudged to the wife, “the court may enforce the payment thereof by execution or otherwise, as in other cases.” In construing this language, the court say: “There are very satisfactory reasons for saying that the divorce judgment stood upon the same footing as ordinary money judgments, and became a lien upon the real estate of the debtor liable to execution, as soon as docketed.” Further citations are unnecessary. These and similar cases illustrate the principle, that a judgment for a gross sum should be none the less a lien on real ■estate, because rendered for alimony in a divorce proceeding.
In our opinion, the circuit court did not err in holding that the plaintiff, Minerva Conrad, could not maintain her action to restrain the sheriff from the sale of the premises acquired by her after the judgment for alimony was rendered, and that such judgment became a lien on the premises, which Mrs. Everich could enforce by a levy of execution, and a sale to satisfy it.

Judgment affirmed.